UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.  : | Case No. 21-CR-448 (TJK) |
| : | |
| GLENN BASS, JR., : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MOTION TO REVOKE PRETRIAL RELEASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to revoke Defendant's pretrial release. The bases for the Government's motion are as follows.

**Procedural History and Relevant Facts**

**I.   Charges, Detention Hearing, and Defendant's Conditional Release**

On June 23, 2021, Defendant was charged by Complaint for:   (1) Threatening a Federal Officer, in violation of 18 U.S.C. § 115(a)(1)(B); (2) Possession of a Firearm in a Federal Facility, in violation of 18 U.S.C. § 930(a); (3) Possession of a Firearm in a Federal Facility with intent that a firearm be used in the commission of a crime, in violation of 18 U.S.C. § 930(b); and (4) Carrying a Pistol Without a License, in violation of 22 D.C. Code § 4504(a). (ECF No. 1.)

A Detention Hearing was held on June 30, 2021. The Government moved for Defendant's pretrial detention pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (involving a crime of violence[1]) and 3142(f)(1)(E) (involves the possession or use of a firearm), given the nature and circumstances of

---

[1] *See* 18 U.S.C. § 3156(a)(4)(A)-(B) (defining a "crime of violence" as used in Section 3142(f)(1)(A); *United States v. Chrestman*, 525 F. Supp 3d 14, 21-22, 28 (D.D.C. 2021) (C.J. Howell).

1

the very serious incident charged, in order to reasonably assure the safety of Officer-1 (the subject of Defendant's treats) and the safety of the community. (*See* June 30, 2021 Minute Entry; *see also* Government's Memorandum in Support of Pretrial Detention (ECF No. 5.).) Magistrate Judge Zia M. Faruqui denied the Government's motion and granted Defendant's motion for release pursuant to certain conditions. (June 30, 2021 Minute Entry.)

As set forth in the Order Setting Conditions of Release (ECF No. 8), Defendant's pretrial release conditions included standard conditions and a series of special conditions, including in pertinent part:

1. Defendant was released to the custody of his father, Glenn Bass Sr., to serve as a third party custodian for Defendant

2. Defendant must submit to supervision and report for supervision by the District of Maryland;

3. Defendant must notify PSA in the District of Maryland of all movement;

4. Defendant must stay away from all Veterans' Administration facilities unless in need of assistance for a medical emergency;

5. Defendant must avoid all contact, directly or indirectly, with Officer-1;

6. Defendant is to find a mental health provider in Maryland and must share mental health compliance with PSA in Maryland the District of Columbia;

7. Defendant must not possess a firearm, destructive device, or other weapon;

8. Defendant shall be subject to Home Incarceration, pursuant to which Defendant is restricted to 24-hour-a-day lock-down at his residence except for medical necessities and court appearances or other activities specifically approved by the Court;

9. Defendant must comply with location monitoring technology as directed by the pretrial services or supervising officer; and

10. Defendant must stay away from the District of Columbia, unless to attend Court, Pretrial business, or to meet with his counsel.

According to the U.S. Probation and Pretrial Services Office for the District of Maryland ("PSA"), Defendant's home confinement has been monitored by radio frequency monitoring technology, which advises PSA if Defendant's transmitter is not within range of a unit in Defendant's residence. Such radio frequency monitoring does not provide GPS monitoring. This means that while PSA will know if Defendant leaves his residence, PSA does not have any ability to track Defendant's location – whether for authorized or unauthorized travel.

On July 1, 2021, a federal grand jury sitting in the District of Columbia returned a four-count Indictment charging Defendant with:  (1) Threatening a Federal Officer, in violation of 18 U.S.C. § 115(a)(1)(B); (2) Possession of a Firearm in a Federal Facility, in violation of 18 U.S.C. § 930(a); (3) Possession of a Firearm in a Federal Facility with intent that a firearm be used in the commission of a crime, in violation of 18 U.S.C. § 930(b); and (4) Carrying a Pistol Without a License, in violation of 22 D.C. Code § 4504(a). (ECF No. 6.)

## II.     April 5, 2022 PSA Report and Status Hearing

Most recently, on April 5, 2022, PSA reported that Defendant was not compliant with the conditions of release, specifically that Defendant has not provided proof of mental health treatment. (ECF No. 15 at 2.) PSA reported that Defendant did not report for a scheduled mental health assessment at Insight Treatment Center on March 1, 2022. Accordingly, PSA requested that Defendant be required to keep all scheduled mental health treatment appointments and participate in such treatment as deemed necessary.

On April 5, 2022, the Court held a Status Hearing for this case, in which all parties, including Defendant, participated remotely by videoconference. The defense reported that the above-referenced missed appointment was due to a scheduling error and/or miscommunication. The defense further reported that a new appointment had been scheduled for Defendant, that the

date and time of the appointment had been confirmed with Defendant, and that Defendant planned to attend as required. The Court set another status hearing in the case for June 13, 2022.

**III.     Defendant Becomes a Loss of Contact with Unknown Location on April 15, 2022**

Defendant was scheduled to attend a mental health assessment on Friday, April 15, 2022, at Insight Treatment Center in Camp Springs, Maryland. PSA approved Defendant to leave his residence on April 15, 2022 from 11:15 a.m. to 2:45 p.m. for this sole purpose.

According to PSA, Defendant left his residence at approximately 11:15 a.m. on April 15, 2022. However, Defendant did not appear for the mental health assessment at Insight Treatment Center as scheduled. PSA reported that the supervising officer repeatedly attempted to reach Defendant on Defendant's cell phone and left voicemail messages, sent text messages, and emailed Defendant. Defendant did not respond and PSA has not been able to establish contact with Defendant. As of April 16, 2022, Defendant had not returned to his residence and PSA has not been able to contact Defendant.

According to PSA, Defendant's father (third party custodian) and defense counsel reported to PSA that, on the morning of April 15, 2022, Defendant advised his father and defense counsel that Defendant was going to attend the scheduled mental health appointment. Defendant reportedly borrowed his father's vehicle to travel to the appointment and left his residence at approximately 11:15 a.m. As of the evening of April 15, 2022, neither Defendant's father nor defense counsel had knowledge of Defendant's location. Defendant's father reported that he contacted the Charles County Sheriff's Department for assistance, provided information regarding his vehicle, and agreed to keep PSA updated with any additional info learned regarding Defendant's location or condition.

On April 16, 2022, at approximately 7:00 p.m., PSA reported that Defendant's father informed PSA that Defendant had been located at his paternal grandmother's residence in Charleston, South Carolina. According to Defendant's father, Defendant apparently drove himself to his grandmother's residence in South Carolina and was in a "mental health crisis." Defendant's father further reported that Defendant was with family at the Charleston, South Carolina residence and was non-violent, calm, and following his family members' instructions. Defendant's father reported that he intended to travel to South Carolina to bring Defendant back to his residence in Maryland. Defendants' father requested guidance from PSA, who advised that the family should contact emergency services to provide any mental health evaluations and treatments that may be appropriate.

Due to the Defendant not attending the scheduled mental health assessment appointment on April 15, 2022, Defendant's failure to abide by the location monitoring schedule requirements, Defendant's failure to report any deviation from his authorized travel from his residence, and Defendant's failure to be reachable by PSA supervision, PSA reported to the Government that PSA believes an Arrest Warrant for Defendant should be issued at this juncture.

### The Government's Bases for Revocation of Pretrial Release

The Government moves for the revocation of Defendant's conditional release pending trial in this case. Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Specifically,

> [t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer – (1) finds that there is – . . . (B) clear and convincing evidence that the person has violated any other condition of release; and (2) finds that – (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person

> will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b). As set forth above, according to PSA, Defendant has violated multiple conditions of his pretrial release. The Government respectfully submits that Defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) (involving a crime of violence), 3142(f)(1)(E) (involving firearm or other dangerous weapon), and 3142(f)(2)(A) because Defendant poses a danger to the community and a serious risk of flight.

The Government incorporates and realleges the factual background of the charged incident and each of the grounds for Defendant's pretrial detention set forth in the Government's Memorandum in Support of Pretrial Detention. (ECF No. 5.) The Government respectfully submits that Defendant remains a danger to the community and now also poses a significant flight risk. The Government must establish that a defendant poses a danger to the community by clear and convincing evidence in order to warrant pretrial detention pursuant to 18 U.S.C. § 3142(e). *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). The Government must establish that a defendant poses a risk of flight by a preponderance of the evidence. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986).

All four of the Bail Reform Act factors – including (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release – favor Defendant's pretrial detention in this case given Defendant's risk of flight and potential danger to the community. 18 U.S.C. § 3142(g). Moreover, Defendant's recent demonstrated non-compliance with several of the most significant conditions

of his pretrial release makes clear that there is no combination of conditions that would assure the safety of the community and Defendant's appearance at future proceedings should Defendant remain on pretrial release.

As set forth in the Government's Memorandum in Support of Pretrial Detention (ECF No. 5), the nature and circumstances of the charged offense, the weight of the evidence against Defendant, and the nature and seriousness of the danger to any person or the community that would be posed by Defendant's release *all* weigh in favor of pretrial detention in this case. The charged offenses involve a crime of violence and the unlawful possession of a loaded firearm, during which Defendant openly issued a series of very serious threats against his training supervisor, a VA Police Officer, while unlawfully possessing his Glock 19 firearm loaded with a round in the chamber, additional rounds in the magazine, and two additional loaded magazines nearby. Defendant's actions posed a clear and present danger for Officer-1, the subject of Defendant's threats, and other VA Police members on duty that day, and evidenced a dangerous motive and intent that continue to pose a real and ongoing danger to the community.

Importantly, Defendant's history and characteristics also now strongly weight in favor of pretrial detention in this case. As set forth above, on April 15, 2022, Defendant failed to attend a required mental health assessment appointment, despite having informed his third party custodian and defense counsel earlier that morning of his intention to do so. This noncompliance closely followed the April 5, 2022 Status Hearing in this case, during which Defendant was reminded of his obligation to attend such an appointment and agreed to do so.

Defendant also ceased all communication with PSA and did not respond to the supervising officer's attempts to contact him. In addition, Defendant failed to abide by the authorized leave parameters pursuant to the conditions of his home confinement and location monitoring. Defendant

did not return to his residence as required and his location became unknown to PSA. Instead, according to Defendant's third party custodian, Defendant apparently traveled to South Carolina without authorization. Whatever the catalyst(s) for Defendant's sudden breach of his pretrial supervision and release conditions, the result is that Defendant is not currently amenable to pretrial supervision and cannot be trusted to abide by the strict conditions of his release, which were imposed in order to assure the safety of the community.

Defendant's breach now raises serious concerns about ensuring his future appearance in this case, as well as any potential compliance with the special condition of participating in mental health treatment as appropriate. Moreover, the clear risk of flight now posed by Defendant's also compounds the potential danger to the community posed by his conditional release. Defendant has demonstrated that he will not abide by the conditions of his home confinement or maintain contact with PSA, as required. Not only does this render Defendant incapable of the appropriate supervision required for continued conditional release – it also raises grave concerns about Defendant's potential danger to the community when he has shown that he will not abide by the conditions of his release, all of which were designed to ensure the safety of the community and his appearance at future proceedings.

*    *    *

**Conclusion**

The Bail Reform Act factors strongly weigh in favor of revoking Defendant's conditional release and detaining Defendant without bond pending trial because Defendant has demonstrated an ongoing danger to the community and flight risk.

The Government also respectfully requests that the Court issue an Arrest Warrant for Defendant based on Defendant's noncompliance with pretrial release conditions. PSA concurs with the Government's request.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052


By:    */s/ Thomas G. Strong*
        Thomas G. Strong
        NY Bar No. 4958658
        Assistant United States Attorney
        601 D Street NW
        Washington, DC 20530
        Phone:  (202) 252-7063
        Email:  thomas.strong@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on April 17, 2022.

By:   */s/ Thomas G. Strong*
      Thomas G. Strong
      Assistant United States Attorney