**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-448 (TJK)** |
| | : | |
| **GLENN BASS JR.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. Following the defendant's plea of guilty to Counts One and Three in the Indictment, the defendant faces a guideline sentencing range of 18 to 24 months of imprisonment and a statutory maximum sentence of 10 years of imprisonment (Count One) and five years of imprisonment (Count Three). For the reasons set forth below, the Government respectfully recommends that the Court impose a sentence of 18 months of imprisonment, followed by a one-year term of supervised release.

**PROCEDURAL HISTORY**

Defendant Glenn Bass Jr. was arrested following the instant offenses on June 22, 2021, and initially charged by federal criminal complaint on June 23, 2021. (ECF No. 1.) On July 1, 2021, a four-count Indictment was returned charging Bass Jr. with: (1) Influencing, Impeding, or Retaliating Against a Federal Official by Threat, in violation of 18 U.S.C. § 115(a)(1)(B); (2) Unlawful Possession of Firearms and Dangerous Weapons in Federal Facilities, in violation of 18 U.S.C. § 930(a); (3) Unlawful Possession of Firearms and Dangerous Weapons in Federal

1

Facilities, in violation of 18 U.S.C. § 930(b); and (4) Carrying a Pistol Without a License (Outside

Home or Place of Business), in violation of 22 D.C. Code § 4504(a). (ECF No. 6.)

On July 27, 2022, pursuant to a plea agreement, Bass Jr. pleaded guilty Counts One and

Three of the Indictment. (ECF Nos. 27-29.) Both charges are for offenses committed by Bass Jr.

on June 22, 2021, at the Washington, D.C. Veterans Affairs Medical Center campus in

Washington, D.C. ("DCVAMC").

Following the plea hearing, the Court ordered Bass Jr. detained pending sentencing in this

case. (ECF No. 30.) The defendant self-surrendered to the United Stats Marshals Service as

ordered on August 3, 2022, and remains in custody. (August 3, 2022 Minute Entry.)

## ANALYSIS

### I.     The Offense Conduct

As summarized in the Statement of Offense in Support of Guilty Plea (ECF No. 28) and

Presentence Investigation Report (¶¶ 14-15) (ECF No. 35), on Tuesday, June 22, 2021, at

approximately 10:00 a.m., Bass Jr. made multiple threatening statements against Victim-1, a

supervisory federal police officer known to Bass Jr., during Bass Jr.'s employment as a VA Police

Officer trainee at the DCVAMC.

The United States Department of Veterans Affairs Police ("VA Police") is a law

enforcement component of the United States Department of Veterans Affairs ("VA"). The

DCVAMC campus is a federal facility located at 50 Irving Street N.W., Washington, D.C. 20422.

*See* Exhibit A. Signs are posted at all entry points to the DCVAMC campus to notify entrants that

no firearms or other weapons are allowed on the premises. *See* Exhibit B (Gate One entrance) and

Exhibit C (Gate Two entrance).

Bass Jr. was previously employed by VA Police at the DCVAMC and resigned in December 2019. In May 2021, Bass Jr. was rehired by the VA Police at the DCVAMC and was assigned to training duty at all relevant times. Bass Jr. VA police callsign was "V-45."

Victim-1 is a supervisory police officer with the VA Police Training Division at the DCVAMC and was supervising Bass Jr. during his training assignment. Victim-1's VA Police callsign was "V-3." Victim-1 previously served in the U.S. Air Force Security Forces.

Prior to June 22, 2021, Victim-1 communicated with Bass Jr. and others at the VA regarding several concerns about Bass Jr.'s work performance and fitness for duty as a member of the VA Police. *See* Exhibit D (June 21, 2021, report regarding "Fit for Duty Glen Bass").

One June 22, 2021, Bass Jr. was stationed at the DCVAMC as part of his VA Police training assignment. Bass Jr. was equipped with a VA Police handheld radio, which can be used to communicate with other VA Police members.  Bass Jr. had not been issued a VA Police service firearm.

At approximately 10:00 am, Bass Jr. made multiple threatening statements against Victim-1 over the VA Police radio channel. Bass Jr. stated the following, in sum and substance, on the VA Police radio channel:

> V-45 to V-3. Let me tell you something. I was a U.S. Army infantryman. And I'm a man. And I'm going to tell your bitch ass one last time. If I'm outside, I'm outside. But I got something for you at my car. Come see me. Security Forces.
>
> I know you heard me, V-3. V-45 is at his car. Come see me. Security Forces. Let's go. Let's train.
>
> This is a personal meeting for V-3 and V-45. If anybody get in my way, I've got my cell phone, I'm calling MPD. I'm about to light it up at the DCVAMC. Let's go.
>
> Where is V-3 at? Where is V-3 at?

Bass Jr.'s threatening statements were captured on a recording of the VA Police radio channel. *See* Exhibit E.

VA Police officers responded to Parking Lot 4 on the DCVAMC campus, where they located Bass Jr. standing next to his vehicle. Bass Jr. complied with the instructions of the responding VA Police officers, removed a black Glock Model 19 firearm from his front pants pocket, and threw the firearm into the back seat of his vehicle. VA Police officers then placed Bass Jr. under arrest. A bystander captured a portion of the VA Police's response and arrest of Bass Jr. on video. *See* Exhibit F. VA Police officers searched Bass Jr.'s vehicle, where they located the black Glock Model 19 firearm that Bass Jr. was observed throwing into the vehicle, and two additional loaded Glock 19 ammunition magazines. *See* Exhibit G (VA Police report).

The recovered firearm is a Glock Model 19, semi-automatic 9mm handgun, Serial No. BEHN658. At the time the firearm was recovered, it was loaded with one round in the chamber and additional rounds in a 15-round capacity magazine. The two additional Glock 19 magazines located in Defendant's vehicle were also loaded with 9mm ammunition. *See* Exhibit H (photograph of firearm, magazines, and ammunition). All together, Bass Jr. had 43 rounds of 9mm Luger ammunition in the Glock 19 firearm and additional magazines. Bass Jr. previously purchased the firearm on October 31, 2017, at a federal firearms dealer in Maryland.

II.      **The Government's Analysis of the Sentencing Guidelines**

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). The Supreme Court has noted that the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*,

454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

To calculate a Guidelines sentence, a district court must first select the applicable offense guideline and then select the base offense level within that applicable offense guideline. *United States v. Flores*, 912 F.3d 613, 616 (D.C. Cir. 2019). As the D.C. Circuit has long held, this inquiry must include an evaluation of all relevant conduct that could affect the Guidelines calculation.

> In the post-*Booker* world, the court must calculate and consider the applicable Guidelines range but is not bound by it. Under the Guidelines, "the sentencing range for a particular offense is determined on the basis of all 'relevant conduct' in which the defendant was engaged and not just with regard to the conduct underlying the offense of conviction." *Witte v. United States*, 515 U.S. 389, 393 (1995) (citing U.S.S.G. § 1B1.3). Section 1B1.3 details the conduct the sentencing court may consider in determining the applicable Guidelines range and the commentary to that section states, "Conduct that is not formally charged or is not an element of the offense of conviction may enter into the determination of the applicable guideline sentencing range." U.S.S.G. § 1B1.3, Commentary, Background.

A.    **Defendant's Criminal History Category**

The Government concurs with United States Probation's assessment of Bass Jr.'s criminal history score, as set forth in the Presentence Investigation Report. PSR ¶ 38. Bass Jr.'s criminal history score is zero, which translates to a Criminal History Category of I.

### B.      The Applicable Sentencing Guidelines

The Government also concurs with Probation's assessment of the applicable Sentencing

Guidelines for this offense (PSR ¶¶ 20-35), summarized as follows:

Count One:  Violation of 18 U.S.C. § 115(a)(1)(B)

| | | |
|---|---|---|
| U.S.S.G. § 2A6.1(a)(1) | Base Offense Level | 12 |
| U.S.S.G. § 2A6.1(b)(1) | Specific Offense Characteristic | +6 |
| | Conduct Evidencing Intent to Carry Out Threat | |
| U.S.S.G. § 3E1.1(a) & (b) | Acceptance of Responsibility | -3 |
| | **Total** | **15** |

Count Three:  Violation of 18 U.S.C. § 930(b)

| | | |
|---|---|---|
| U.S.S.G. § 2K2.5(c)(1)(A) | | |
| U.S.S.G. § 2X1.1(a) | Base Offense Level | 18 |
| U.S.S.G. § 3E1.1(a) & (b) | Acceptance of Responsibility | -3 |
| | **Total** | **15** |

Combined Offense Level

Pursuant to U.S.S.G. § 3D1.2, Counts One and Three group together.

Therefore, the applicable Guidelines range for Offense Level 15 and Criminal History

Category I is 18 to 24 months of imprisonment and one to three years of supervised release. PSR

¶¶ 75, 77, 83. Because the applicable guideline range is in Zone D of the Sentencing Table, the

minimum term must be satisfied by a sentence of imprisonment in order for the sentence to

conform to the Sentencing Guidelines. U.S.S.G. § 5C1.1(f). Bass Jr. is also not eligible for

probation. *Id.* § 5B1.1.

### III.      The Government's Analysis of the Statutory Sentencing Factors

The Government respectfully submits that the statutory sentencing factors enumerated in

18 U.S.C. § 3553(a) support a sentence at the low end of the Guidelines range – 18 months of

imprisonment – followed by one year of supervised release. Bass Jr.'s Guidelines range

incorporates Bass Jr.'s specific offense conduct at issue (PSR ¶¶ 20-31), his lack of criminal history (PSR ¶ 38), and his acceptance of responsibility for Counts One and Three (PSR ¶¶ 33-34.)

The nature and circumstances of the offenses committed by Bass Jr. are very serious and do not warrant a variance below the low end of the Guidelines range. *See* 18 U.S.C. § 3553(a)(1). Bass Jr. has pleaded guilty to two federal felony offenses for threatening to harm a federal officer, and for possessing his own loaded firearm at the DCVAMC, a federal facility, with the intent that the firearm be used in the commission of a crime. (ECF Nos. 27, 28.) Both offenses, including Bass Jr.'s conduct evidencing an intent to carry out his threats against Victim-1, are accounted for in the Guidelines. PSR ¶¶ 20-35.

The threats lodged by Bass Jr. against Victim-1 were immediately concerning to Victim-1 and other VA Police officers on duty who promptly responded to mitigate the threat posed by Bass Jr. The threats are particularly concerning to the Government for a number of reasons:

- Bass Jr. is a former servicemember and a former federal VA Police law enforcement officer who previously served at the DCVAMC, who has training in weapons, tactics, and knowledge of the VA Police and DCVAMC campus.

- Bass Jr., as a former VA Police officer at the DCVAMC, and then-VA Police officer trainee at the time of the offenses, was in a position of trust and responsibility serving with his colleagues entrusted to secure the medical center and the community it serves.

- Bass Jr. personally knew Victim-1, his threats were specific and repeated, and he personally identified Victim-1 as his intended target multiple times.

- At the time Bass Jr. made the threats, he was located on the DCVAMC campus in close proximity to Victim-1, the VA Police station, and the DCVAMC medical facilities.

- At the time Bass Jr. made the threats, he had illegally brought his own personal firearm, 43 rounds of ammunition, and three firearm magazines to the DCVAMC facility.

- Bass Jr.'s threats against Victim-1 included the statement that "I got something for you at my car. Come see me." In fact, when VA Police officers responded to Bass Jr.'s location, Bass Jr. had his hand on his loaded firearm, and the two additional loaded firearm magazines were located in close proximity on the back seat of Bass Jr.'s vehicle. Bass Jr.'s firearm was loaded with a round in the chamber and the firearm and three magazines contained a total of 43 rounds of ammunition;

Taken together, the recommended sentence is appropriate in order to reflect the seriousness of these offenses, to promote respect for the law and prohibitions on such conduct, and to provide just punishment for Bass Jr.'s offenses. *See id.* § 3553(a)(2)(A). The recommended sentence would also serve to protect the public from additional crimes by Bass Jr. while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Bass Jr. committing other offenses going forward. *See id.* § 3553(a)(2)(B)-(C).

Although Bass Jr. was released on conditions pending trial in this case (ECF No. 8), to include home imprisonment, for approximately one year, Bass Jr. did fully comply with the conditions of release as required during that period. *See* PSR ¶¶ 8-12. As the July 28, 2022 Detention Order observed, Bass Jr.'s noncompliance included a significant breach of his conditions of release by unauthorized travel in April 2022[1], followed by additional breaches after the Court's admonishment about complying with the required conditions and the imposition of

---

[1] The Government filed a Motion to Revoke Pretrial Release for this violation. (ECF No. 16.) The circumstances of Bass Jr.'s unauthorized travel included more than 24 hours during which none of the Pretrial Services Agency, the supervising officer, the third party custodian, defense counsel, or the Government knew the defendant's location or activity.

stricter conditions going forward. (ECF No. 30.) Therefore, the Government respectfully submits that the period during which Bass Jr. was conditionally released on home imprisonment for this case should not mitigate or offset the term of imprisonment to be imposed, particularly where Bass Jr.'s most significant non-compliance was for breaching the home imprisonment condition.

The Government also recommends that Bass Jr. be sentenced to one year of supervised release following his release from the term of imprisonment in this case. The Government believes that a term of supervised release after Bass Jr.'s imprisonment would provide necessary support, supervision, and opportunity for his reentry and rehabilitation. The Government also supports Probation's recommendations for certain treatment programs, as appropriate, while Bass Jr. is incarcerated and as conditions of supervised release.

IV.     **The Government's Sentencing Recommendation**

For the reasons described above, the Government respectfully recommends that the Court impose a sentence of 18 months of imprisonment followed by one year of supervised release.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney


By:     */s/ Thomas G. Strong*
        Thomas G. Strong
        Assistant United States Attorney
        601 D Street NW
        Washington, DC 20530
        thomas.strong@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on September 30, 2022.

By:      /s/ Thomas G. Strong
         Thomas G. Strong
         Assistant United States Attorney

10